UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
BALCHEM CORPORATION,

                      Plaintiff,

    - against -

ACTUS NUTRITION f/k/a MILK SPECIALTIES
GLOBAL, LUKE LINES, and BEN
HARDCASTLE,

                      Defendants.
------------------------------------------------------------x

**OPINION & ORDER**

No. 25-CV-1027 (CS)

Appearances:

David M. Friebus
Baker & Hostetler LLP
Chicago, Illinois

Daryl G. Leon
Baker & Hostetler LLP
New York, New York
*Counsel for Plaintiff*

Lee J. Lefkowitz
Zarin & Steinmetz LLP
White Plains, New York
*Counsel for Defendants Luke Lines and Ben Hardcastle*

Aimee D. Dayhoff
Cianna G. Halloran
Winthrop & Weinstine, P.A.
Minneapolis, Minnesota
*Counsel for Defendant Actus Nutrition f/k/a Milk Specialties Global*

Seibel, J.

      Before the Court is Plaintiff's motion to remand. (ECF No. 23.) For the following reasons, the motion is GRANTED.

**I.      BACKGROUND**

      **A.      Facts**

The following facts are drawn from the Complaint, (ECF No. 1 Ex. A ("Compl.")), and the notice of removal, (ECF No. 1 ("NOR")). *See Enters. v. Allen*, No. 15-CV-6675, 2016 WL 3512176, at *1 (E.D.N.Y. June 22, 2016).

Plaintiff Balchem Corporation ("Plaintiff" or "Balchem") manufactures and sells animal nutritional ingredients. (Compl. ¶¶ 10, 19.) As part of its business, Plaintiff sells products designed to enhance the performance of livestock, including dairy cows. (*Id.* ¶ 11.) Defendant Actus Nutrition ("Actus"), formerly known as Milk Specialties Global, also sells products designed to enhance livestock performance, including specialty proteins and dairy ingredients, and competes with Plaintiff in the dairy industry. (*Id.* ¶¶ 11, 20-21.) Specifically, in late 2023, Actus launched a new product called RP-Met, which is a supplement for dairy cows and competes directly with a similar product of Plaintiff's. (*Id.* ¶¶ 11, 22.)

Defendant Luke Lines began working for Plaintiff in 2012 as a Regional Sales Specialist – Northeast, a role in which he was responsible for developing and servicing Plaintiff's customers, developing and maintaining relationships with influencers, and educating customers about products and technologies to grow sales. (*Id.* ¶ 24.) In 2018, Lines was promoted to Regional Development Manager – East, a role in which he was responsible for managing a team of sales representatives in addition to maintaining and developing relationships with Plaintiff's customers and influencers. (*Id.* ¶¶ 25-26.) In order for Lines to carry out these responsibilities, Plaintiff provided Lines with confidential information, including but not limited to, customer lists, sales, pricing and profitability information, marketing strategies, product research and studies, and product development information. (*Id.* ¶ 28.)

To safeguard this information, Plaintiff and Lines entered into a Confidentiality and Non-Competition Agreement (the "Agreement"). (*Id.* ¶ 30.) Pursuant to the Agreement, Lines agreed to hold all confidential information in the strictest confidence and not disclose that information to any person at any time, either during or after his employment, without specific prior written authorization from Plaintiff's executive officers. (*Id.* ¶ 31; *id.* Ex. A § 1.) Lines also agreed not to directly or indirectly solicit or seek to do business in competition with Plaintiff for a period of one year following the termination of his employment. (Compl. ¶ 32; *id.* Ex. A § 4.) Lines further agreed that he would not directly or indirectly enter into or engage in the same business as that conducted and carried on by Plaintiff or divert or attempt to divert any business or customers or in any manner compete with Plaintiff for a period of one year following his termination. (Compl. ¶ 33; *id.* Ex. A § 3.) Lines also accepted Plaintiff's Information Security and Acceptable Use Statement, in which he agreed not to divulge any proprietary information or sensitive data without Plaintiff's prior written consent and not to transmit or save any of Plaintiff's material to personal storage or email. (Compl. ¶ 37.)

Lines stopped working for Plaintiff in November 2023. (*Id.* ¶ 38.) Before he left, he downloaded to a flash drive approximately 200 files from Plaintiff's network containing Plaintiff's confidential information, including lists of influencers, key industry contacts, customer lists, customer account information, survey data, rebate program information and targeted marketing information. (*Id.* ¶ 39.) Lines then joined Actus in August 2024. (*Id.* ¶ 56.) Plaintiff became concerned that Lines was violating the Agreement while at Actus, including by soliciting Balchem's customers, competing with Balchem, and using Balchem's confidential information, and so notified Actus. (*Id.* ¶¶ 61-62.) Plaintiff communicated with Actus to try to secure Lines's compliance with his obligations under the Agreement, but was unsuccessful. (*Id.*

¶ 63.)  Plaintiff alleges upon information and belief that Lines solicited the same customers to which he provided services at Balchem, possesses Balchem's confidential information, and is using said confidential information to further Actus's interests in breach of the Agreement.  (*Id.* ¶¶ 64-68.)

Plaintiff similarly alleges that Defendant Ben Hardcastle, who worked for Balchem as a Regional Development Manager from July 1, 2014 to July 2024, signed the same Confidentiality and Non-Competition Agreement that Lines signed.  (*Id.* ¶¶ 41, 46-47, 52.)  After Hardcastle resigned from Balchem, he downloaded 5,000 files from Balchem's network containing Balchem's confidential information.  (*Id.* ¶ 53.)  He then began working at Actus in August 2024 along with Lines.  (*Id.* ¶ 56.)  Plaintiff alleges upon information and belief that Hardcastle, like Lines, solicited the same customers to which he provided services at Balchem, possesses Balchem's confidential information, and is using said confidential information to further Actus's interests in breach of his agreement with Plaintiff.  (*Id.* ¶¶ 64-68.)

Plaintiff is a Maryland corporation with a principal place of business in New Jersey.  (*Id.* ¶ 1; NOR ¶ 7.)  Actus Nutrition is a Delaware corporation with a principal place of business in Minnesota.  (Compl. ¶ 2.)  Defendant Lines is a citizen of New York, (*id.* ¶ 4), and Defendant Hardcastle is a citizen of Utah, (*id.* ¶ 5).  The parties do not dispute that the amount in controversy exceeds $75,000.  (NOR ¶ 12.)

B.  **Procedural History**

On December 18, 2024, Plaintiff commenced this action in the New York State Supreme Court, County of Orange, asserting claims against Lines and Hardcastle for breach of contract and against Actus for tortious interference with Lines's and Hardcastle's contracts.  (*See* Compl.)  The parties filed a joint stipulation in the state court agreeing that Defendants had until February 6, 2025 to remove, answer, or otherwise respond to the Complaint.  (*See* NOR ¶ 4; *id.* Ex. B.)

4

On February 5, 2025, Defendants removed the action to this Court. (NOR.) On February 12, 2025, Defendants filed a pre-motion letter in anticipation of their motion to dismiss. (ECF No. 11.) The next day, Plaintiff filed its own pre-motion letter in anticipation of its motion to remand. (ECF No. 15.) On March 13, 2025, the Court held a pre-motion conference, at which it discussed both proposed motions. (*See* Minute Entry dated Mar. 13, 2025.) The parties agreed to brief the motion for remand first, and the Court set a briefing schedule. (*See id.*) Plaintiff's motion for remand followed. (ECF No. 23.)

## II.   LEGAL STANDARD

As a general matter, removal jurisdiction must be "strictly construed," *Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 32 (2002), and any doubts should be resolved against removability "out of respect for the limited jurisdiction of the federal courts and the rights of states," *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 488 F.3d 112, 124 (2d Cir. 2007).[1] Therefore, "[a] party seeking removal bears the burden of showing that federal jurisdiction is proper." *Montefiore Med. Ctr. v. Teamsters Loc. 272*, 642 F.3d 321, 327 (2d Cir. 2011).

An action filed in state court may be properly removed by a defendant if "the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). This includes all civil actions with diversity of citizenship between the parties and an amount in controversy exceeding $75,000. *See* 28 U.S.C. § 1332(a). Additionally, even if the requirements of diversity jurisdiction are met, the removing party must still comply with the removal statute's procedural requirements. *See Benjamin v. Ollie's Bargain Outlet, Inc.*, No. 24-CV-683, 2024 WL 5057750, at *2 (N.D.N.Y. Dec. 9, 2024) ("The removing party must also comply with [the] procedural

---

[1] Unless otherwise indicated, case quotations omit internal citations, quotation marks, footnotes and alterations.

requirements set forth in [the] statute."); *Burr ex rel. Burr v. Toyota Motor Credit Co.*, 478 F. Supp. 2d 432, 436 (S.D.N.Y. 2006) ("At all times the party asserting jurisdiction bears the burden of proof that jurisdictional and procedural requirements have been met."). Pursuant to what is known as the forum defendant rule, a civil action "may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2). The removing party must also file the notice of removal within thirty days of the receipt of the initial pleading or summons, and all defendants who have been properly joined and served must join in or consent to removal. *See Benjamin*, 2024 WL 5057750, at *2; *Doe v. Warner*, 659 F. Supp. 3d 293, 299 (E.D.N.Y. 2023).

Jurisdiction pursuant to 28 U.S.C. § 1332 requires "'complete diversity,' meaning that all plaintiffs must be citizens of states diverse from those of all defendants." *Tagger v. Strauss Grp. Ltd.*, 951 F.3d 124, 126 (2d Cir. 2020). But "[a] plaintiff may not defeat diversity jurisdiction by improperly joining a non-diverse defendant with no genuine connection to the matter." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 356 (2d Cir. 2011). Under the doctrine known as fraudulent joinder – a bit of a misnomer in cases like this, where there is no allegation of outright fraud in Plaintiff's pleadings – "courts overlook the presence of a non-diverse defendant if from the pleadings there is no possibility that the claims against that defendant could be asserted in state court." *Id.* In other words, joinder will be considered to be fraudulent "when it is established that there can be no recovery against the defendant under the law of the state on the cause alleged." *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 207 (2d Cir. 2001).

"The defendant [asserting fraudulent joinder] bears the heavy burden of proving the circumstances by clear and convincing evidence, with all factual and legal ambiguities resolved in favor of plaintiff." *Brown*, 654 F.3d at 356. "Any possibility of recovery, even if slim,

6

militates against a finding of fraudulent joinder." *Wachtell, Lipton, Rosen, & Katz v. CVR Energy, Inc.*, 18 F. Supp. 3d 414, 419 (S.D.N.Y. 2014). To survive a motion to remand, defendants must demonstrate that recovery against the allegedly fraudulently joined defendant is "legally impossible" or "*per se* precluded under state law." *Id.* The scrutiny of Plaintiff's claims is less searching than it would be on a motion to dismiss for failure to state a claim; "[f]or remand purposes, it is enough to conclude that New York's liberal pleading rules leave open the possibility that the state court would deem the Complaint to state a claim." *Tamm v. Cincinnati Ins. Co.*, No. 18-CV-11415, 2019 WL 5722131, at *6 (S.D.N.Y. Aug. 15, 2019), *report and recommendation adopted*, 2020 WL 1144713 (S.D.N.Y. Mar. 9, 2020).

"Where joinder of a defendant is fraudulent, the court may dismiss the defendant from the action, and assert jurisdiction over the remaining parties." *Kuperstein v. Hoffman-Laroche, Inc.*, 457 F. Supp. 2d 467, 470 (S.D.N.Y. 2006). Such a dismissal is with prejudice. *See Winters v. Alza Corp.*, 690 F. Supp. 2d 350, 357 (S.D.N.Y. 2010); *see also* Fed. R. Civ. P. 41(b).

### III.   DISCUSSION

#### A.   Fraudulent Joinder & the Forum Defendant Rule

Defendants removed this action on the basis of diversity jurisdiction. (*See* NOR ¶ 6.) It is undisputed that the parties are completely diverse and the amount in controversy requirement is met here. Nevertheless, Plaintiff argues removal was improper because Defendant Lines is a citizen of New York and thus cannot remove pursuant to the forum defendant rule. (ECF No. 24 ("P's Mem.") at 1.)

Defendants argue that removal was proper because Lines was fraudulently joined to prevent removal, and therefore the Court should not consider his citizenship when determining whether removal was proper. (ECF No. 27 ("Ds' Opp.") at 1.) As an initial matter, although some courts have found that fraudulent joinder may not apply in the context of the forum

7

defendant rule, *see Morris v. Nuzzo*, 718 F.3d 660, 667 (7th Cir. 2013) (court declined to extend fraudulent joinder doctrine to diverse resident defendants), courts in this Circuit have applied the doctrine to in-state defendants, *see, e.g.*, *Almeciga v. Ctr. for Investigative Reporting, Inc.*, 121 F. Supp. 3d 379, 382-83 (S.D.N.Y. 2015) (finding fraudulent joinder and denying motion to remand where plaintiff argued removal improper based on forum defendant rule). Plaintiff does not contest that fraudulent joinder extends to the forum defendant rule. (*See* P's Mem. at 2-3 (arguing only that Defendants had not met burden to show fraudulent joinder).) I will assume that fraudulent joinder can be an exception to the forum defendant rule so long as Defendants meet their burden.

To meet that burden of showing that there is no possibility that Plaintiff could recover against Lines in state court, Defendants submitted Lines's affidavit, which sets forth factual allegations that contradict those in the Complaint. (*See* ECF No. 26 ("Lines Aff.").) Defendants argue the Court may consider this affidavit because courts in this Circuit routinely rely on matters outside the pleadings when conducting a fraudulent joinder analysis. (*See* Ds' Opp. at 9-12.) Plaintiff argues that courts cannot consider evidentiary material in connection with a challenge based on the forum defendant rule. (*See* ECF No. 28 ("P's Reply") at 3.)

In support of their position, Defendants rely on numerous cases from this Circuit in which courts analyzing fraudulent joinder considered materials outside the pleadings. (*See* Ds' Opp. at 5, 9-12.) But as Plaintiff points out, the fraudulent joinder cases upon which Defendants rely analyzed the alleged fraudulent joinder of a non-diverse defendant. (*See* P's Reply at 4-5.) In other words, in those cases, the alleged fraudulent joinder would bear on the court's subject matter jurisdiction because the non-diverse defendant destroyed complete diversity. It is because

8

the joinder in those cases implicated the courts' subject matter jurisdiction, Plaintiff argues, that the courts could consider materials outside the pleadings. (*See id.* at 3-5.)

Defendants argue this distinction does not matter because they assert that the forum defendant rule "is an issue of subject matter jurisdiction," (Ds' Opp. at 11), as to which courts may consider evidence beyond the pleadings. Defendants are incorrect.[2] The forum defendant rule is a procedural rule – not a jurisdictional requirement. *See Shapiro v. Logistec USA, Inc.*, 412 F.3d 307, 313 (2d Cir. 2005) (explaining that forum defendant rule is a procedural rule and not jurisdictional); *V.V. v. Meta Platforms, Inc.*, No. 23-CV-284, 2023 WL 3613232, at *4 (D. Conn. May 24, 2023) ("[R]emoval is *procedurally* improper under the forum defendant rule because the Individual Defendants are citizens of Connecticut, the forum state.") (emphasis added). Thus, whether the removing party complied with the forum defendant rule does not implicate the court's subject matter jurisdiction. *See Bryant v. Britt*, 420 F.3d 161, 163 n.1 (2d Cir. 2005) ("The district court incorrectly assumed that a remand motion based on § 1441(b) implicated the court's subject-matter jurisdiction."); *Cavanaugh v. Northwell Health, Inc.*, No. 21-CV-1381, 2025 WL 904314, at *4 & n.3 (E.D.N.Y. Mar. 24, 2025) (finding court had jurisdiction over action even though defendant was citizen of forum state because bar on home-state removal is procedural and not jurisdictional, and plaintiff waived argument), *appeal withdrawn*, No. 25-1024, 2025 WL 2966219 (2d Cir. Aug. 19, 2025); *Valladares v. Arceius-Jones*, No. 13-CV-2026, 2013 WL 6504655, at *3 (E.D.N.Y. Dec. 11, 2013) (long settled in

---

[2] Defendants also argue that the forum defendant rule "breaks complete diversity" (Ds' Opp. at 3), but it is not clear what they mean, as in this case there is complete diversity whether or not Lines is fraudulently joined.

9

Second Circuit "that the forum defendant rule is a rule of procedure and does not state a jurisdictional requirement").[3]

Therefore, while it is true that courts conducting a jurisdictional inquiry – which fraudulent joinder often is – "may refer to evidence outside the pleadings," *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000), the inquiry in this case is *not* jurisdictional, so the cases on which Defendants rely do not govern, *see, e.g.*, *Stassa v. Pyramid Mgmt. Grp., LLC*, No. 23-CV-1447, 2024 WL 449367, at *2 (E.D.N.Y. Feb. 5, 2024) (considering fraudulent joinder of non-diverse party, stating court may look outside pleadings, and citing case that said court could do so to determine "whether it has subject matter jurisdiction"); *Gov't Emps. Ins. Co. v. Saco*, No. 12-CV-5633, 2015 WL 4656512, at *3 (E.D.N.Y. Aug. 5, 2015) ("*Because this is a jurisdictional inquiry*, a court can look beyond the face of the complaint in deciding a motion to remand.") (emphasis added); *In re Rezulin Prods. Liab. Litig.*, 133 F. Supp. 2d 272, 279, 281 (S.D.N.Y. 2001) (considering affidavits submitted by defendants where claim was that subject

---

[3] To the extent that a court in this Circuit has suggested otherwise, I respectfully disagree. *See Woolf v. Precision Techs. LLC*, 749 F. Supp. 3d 411, 417 (W.D.N.Y. 2024) (seemingly conflating diversity jurisdiction and the forum defendant rule in stating diversity would be defeated if in-state defendant were properly joined, even though parties were completely diverse).

10

matter jurisdiction was lacking).[4]  I thus cannot consider Lines's affidavit in considering Plaintiff's motion to remand.[5]

Finally, declining to consider extrinsic materials like Lines's affidavit makes sense here, because otherwise the Court would have to evaluate the merits of the case, which is inappropriate at this stage.  *See Brice v. Costco Wholesale Corp.*, No. 23-CV-7857, 2024 WL 2783895, at *5 n.3, *7 (S.D.N.Y. May 28, 2024) (suggesting that it is "inappropriate for a court to permit the parties to litigate the factual accuracy of the allegations in a complaint in the context of a motion to remand"); *Fayet v. Target Corp.*, No. 20-CV-3191, 2021 WL 706332, at *5 n.4 (S.D.N.Y. Feb. 22, 2021) (declining to consider affidavit concerning defendant's lack of involvement in underlying incident because it would require adjudication on the merits).  Even in cases in which courts consider extrinsic evidence on a jurisdictional issue, they acknowledge that it is best to do

---

[4] At least one court considered materials outside the pleadings where the parties were completely diverse but one defendant was a resident of the forum state.  *See Greenberg v. Kolmar Lab'ys, Inc.*, No. 21-CV-7222, 2023 WL 6066198, at *3 (S.D.N.Y. Sept. 18, 2023).  But to support its reliance on outside materials, the court cited cases where the allegedly fraudulently joined defendant was not diverse and thus where the court would not have subject matter jurisdiction if that defendant was properly joined.  *See id.* at *3 n.2.  Given that the forum defendant rule analysis is not jurisdictional, as explained above, I respectfully disagree with the analysis in *Greenberg*.

[5] Some courts in this Circuit have even declined to consider extrinsic materials where the inquiry *was* jurisdictional, based on the Circuit's statement that the issue with respect to fraudulent joinder is whether "there is no possibility, *based on the pleadings*, that a plaintiff can state a cause of action against the non-diverse defendant in state court."  *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 461 (2d Cir. 1998) (emphasis added); *see Resnik v. Rite Aid of N.Y., Inc.*, No. 21-CV-4609, 2021 WL 2941119, at *3 (S.D.N.Y. July 12, 2021); *Vasura v. Acands*, 84 F. Supp. 2d 531, 539 (S.D.N.Y. 2000); *see also Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 302 (2d Cir. 2004) (under doctrine of fraudulent joinder, "courts overlook the presence of a non-diverse defendant if *from the pleadings* there is no possibility that the claims against that defendant could be asserted in state court") (emphasis added).  Although the majority view seems to be that material beyond the pleadings can be considered on a motion to remand for lack of subject matter jurisdiction, *see, e.g.*, *Castillo v. BJ's Wholesale Club*, 645 F. Supp. 3d 85, 90 (E.D.N.Y. 2022), that the matter is not wholly free from doubt strengthens the conclusion that such material cannot be considered when the issue is not one of jurisdiction.

11

so only when it would not involve such an evaluation. *See, e.g.*, *Castillo*, 645 F. Supp. 3d at 93-95 (consideration of affidavit and lease submitted by defendants would require court to adjudicate merits of the underlying suit, which was inappropriate, as standard was "not to assess the *strength* of plaintiff's claims, but rather to assess whether plaintiff *could* assert such a claim against the non-diverse defendants in state court") (emphasis in original); *see also Battaglia v. Shore Parkway Owner LLC*, 249 F. Supp. 3d 668, 673 (E.D.N.Y. 2017) (refusing to engage in analysis that would require it to adjudicate merits of case as "[t]hat is not the purpose of the fraudulent joinder inquiry"); *Algarin v. Waste Mgmt. Sol. LLC*, No. 24-CV-5379, 2025 WL 977724, at *4 (E.D.N.Y. Feb. 7, 2025) ("Other courts have allowed consideration of extrinsic evidence in limited circumstances that do not require an evaluation of the merits of the case."), *report and recommendation adopted*, 2025 WL 974611 (E.D.N.Y. Apr. 1, 2025), and *report and recommendation adopted*, 2025 WL 1005524 (E.D.N.Y. Apr. 3, 2025).

      Indeed, if a defendant's denial of the allegations were enough for a court to conclude that there was no possibility of recovery against him, remand for fraudulent joinder would virtually never occur. Defendants usually, at least at the outset of a lawsuit, deny liability, yet we all know that some of them are eventually found to be liable. To treat the denial as dispositive for purposes of removal would put the cart before the horse.

      Accordingly, I decline to consider Lines's affidavit and conduct my analysis based only on the pleadings. Defendants have not met their burden to show that there is no possibility that Plaintiff can state a cause of action for breach of contract against Lines in New York state court. Indeed, they do not even seriously contend that the Complaint would not survive a motion to dismiss under state law. "Under New York's liberal pleading rules, a plaintiff need only provide at least basic information concerning the nature of a plaintiff's claim and the relief sought."

*Castillo*, 645 F. Supp. 3d at 91. To state a claim for breach of contract under New York law, a plaintiff must allege: (1) the existence of a contract, (2) the plaintiff's performance pursuant to the contract, (3) the defendant's breach of his contractual obligations, and (4) damages resulting from the breach. *See Dee v. Rakower*, 976 N.Y.S.2d 470, 474 (App. Div. 2d Dep't 2013) (collecting cases).

Plaintiff alleges Lines entered into the Agreement, pursuant to which Lines received compensation and significant resources as part of his employment with Balchem in exchange for his agreement not to disclose Balchem's confidential information without its authorization, solicit business in competition with Balchem, or compete with Balchem. (Compl. ¶¶ 27, 29, 31-33, 71.) Plaintiff also alleges that Balchem has complied with the terms of the Agreement, but Lines has not, as Lines solicited the same customers for whom he provided services at Balchem, downloaded 200 confidential files from Balchem, remains in possession of Balchem's confidential information, and is using said confidential information to further Actus's interests, all in breach of his agreement with Balchem. (*Id.* ¶¶ 39, 64-67, 72-77.) Plaintiff further alleges that Lines's conduct has caused and will continue to cause Plaintiff to suffer damages. (*Id.* ¶ 78.)

Plaintiff's allegations set forth the existence of a contract supported by consideration, Plaintiff's performance pursuant to the contract, Defendant's breach, and damages. Plaintiff has therefore pleaded all the elements of a breach of contract action and provided basic information concerning the nature of its claim. Although these allegations are broad, with some pleaded on information and belief, I cannot say that there is no possibility that Plaintiff could assert a claim against Lines in New York state court. *See Woolf*, 749 F. Supp. 3d at 420 ("no possibility" standard not met even though plaintiff's allegations were broad and alleged every possible way defendant may have been involved because plaintiff alleged facts that satisfied elements of claim

13

and considering New York's liberal pleading rules); *Vasura*, 84 F. Supp. 2d at 539 (defendant failed to meet "no possibility" standard where complaint broadly stated all possible ways defendants caused plaintiff's injury); *Ecology & Env't, Inc. v. Automated Compliance Sys. Inc.*, No. 00-CV-887, 2001 WL 1117160, at *2, 5 (W.D.N.Y. Sept. 4, 2001) (defendant failed to meet burden that there was no possibility plaintiff could state cause of action in state court even where plaintiff's allegations were pleaded on information and belief).

Furthermore,

> [t]his case is different than the typical case where a fraudulent joinder is found based on the fact that it is impossible for the plaintiff to recover against the non-diverse defendant under state law based on the allegations in the removed complaint. Those types of cases usually involve an issue as to whether the plaintiff's claim even exists under state law, whether the plaintiff is barred from bringing the claim against the defendant, or whether the plaintiff could even assert a claim against the particular defendant; they do not grapple with the underlying merits of the cause of the action.

*Battaglia*, 249 F. Supp. 3d at 672-73; *see Rosenfeld v. Lincoln Life Ins. Co.*, 239 F. Supp. 3d 636, 639 (E.D.N.Y. 2017) ("Although [Defendant] set forth some strong evidence concerning the ultimate merits of Plaintiff's claim against [non-diverse defendant]," court remanded because defendant failed to demonstrate that plaintiff's action was "entirely impossible"); *Perez v. Novartis Pharms. Corp.*, No. 09-CV-169, 2010 WL 11549189, at *4 (W.D.N.Y. Feb. 11, 2010) (when evaluating complaint under New York law, court "determine[s] only whether the facts as alleged fit within any cognizable legal theory . . . . The criterion is whether the proponent of the pleading has a cause of action, not whether he has stated one"); *Schlackman v. Robin S. Weingast & Assocs., Inc.*, 795 N.Y.S.2d 707, 708 (App. Div. 2d Dep't 2005) ("[I]f [a pleading] states, in some recognizable form, any cause of action known to our law, it cannot be dismissed."). Because breach of contract is clearly a cognizable claim, Defendants have not met the "no possibility" standard.

Finally, even if I had considered Lines's affidavit, I note that the affidavit "simply contradicts Plaintiff's assertion [that Lines solicited customers, competed with Plaintiff, and retained confidential information without Plaintiff's permission] and creates a fact issue which is insufficient to satisfy Defendants' burden of establishing fraudulent joinder by clear and convincing evidence." *Gerbo v. Kmart Corp.*, No. 14-CV-4866, 2015 WL 6691603, at *4 (E.D.N.Y. Nov. 3, 2015); *see Cleary v. Bos. Sci. Corp.*, No. 06-CV-3423, 2006 WL 2689815, at *3 (E.D.N.Y. Sept. 18, 2006) (holding defendants failed to meet burden of establishing fraudulent joinder by submitting unrebutted affidavits disclaiming the allegations in the complaint). Indeed, even if Plaintiff's claim against Lines may ultimately fail, "it is not for this Court to decide the merits of the claim at this stage or for the purposes of determining fraudulent joinder," and thus Defendants have not proven by clear and convincing evidence that there is no possibility of recovery. *Cantafi v. Graybeal*, No. 23-CV-1245, 2024 WL 3271931, at *4 (D. Conn. July 2, 2024) (finding defendants had not met burden where they submitted affidavits denying allegations in plaintiff's complaint). Lines's affidavit, if true, seems persuasive, and if Plaintiff does not have any more facts than those set forth in the Complaint, Defendants may well prevail, but those are big "ifs," and "may well prevail" is not the standard.

Accordingly, Defendants have not shown that Lines was fraudulently joined. Because he is a citizen of New York, Defendants have failed to establish compliance with the forum defendant provision of the removal statute. Removal was thus procedurally improper, and this case must be remanded to state court. *See Benjamin*, 2024 WL 5057750, at *5 (remanding case where defendants failed to comply with procedural requirements of removal); *Cuaya v. Compere*, No. 23-CV-1214, 2023 WL 8231225, at *5 (D. Conn. Nov. 28, 2023) (granting motion to remand

where defendants failed to carry burden to show fraudulent joinder and removal was improper under forum defendant rule).

### B. Attorneys' Fees, Costs & Expenses

Plaintiff also requests costs and attorneys' fees pursuant to 28 U.S.C. § 1447(c), which provides that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c); *Sleight v. Ford Motor Co.*, No. 10-CV-3629, 2010 WL 3528533, at *4 (E.D.N.Y. Sept. 3, 2010). "Courts may award attorney's fees under 28 U.S.C. § 1447(c) where the removing party lacks an objectively reasonable basis for seeking removal." *Abuzaid v. Almayouf*, No. 23-CV-7837, 2023 WL 6440836, at *4 (S.D.N.Y. Oct. 2, 2023), *appeal withdrawn*, No. 23-7484, 2023 WL 9375886 (2d Cir. Dec. 4, 2023).

Although Defendants' argument for removal was wrong, it was not wholly without an objectively reasonable basis. Defendants' position was based on a non-frivolous interpretation of the caselaw, especially in light of the fact that courts in at least two cases in a similar posture to the case here considered materials outside the pleadings, like affidavits. *See Brice*, 2024 WL 2783895, at *7 (declining to award attorneys' fees and costs where defendants' position was based on non-frivolous interpretation of caselaw as developed in several court opinions). Further, although I did not consider Lines's affidavit, I note that Defendants' position was supported by a seemingly strong factual record. Accordingly, the Court declines to grant costs or attorneys' fees to Plaintiff.

### IV. CONCLUSION

For the foregoing reasons, Plaintiff's motion to remand is GRANTED. The Clerk of Court is respectfully directed to terminate the pending motion, (ECF No. 23), and remand this case to the New York State Supreme Court, County of Orange.

**SO ORDERED.**

Dated: November 12, 2025
      White Plains, New York

                                           _____
                                              CATHY SEIBEL, U.S.D.J.